IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **STEVEN PODKULSKI, B533964,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **OFFICER RASH,** | ) | Case No. 25-cv-1453-DWD |
| **SGT. AGNE,** | ) | |
| **C/O DINTELMANN,** | ) | |
| **JOHN DOE 1,** | ) | |
| **JANE DOE 1,** | ) | |
| **ANTHONY WILLS,** | ) | |
| **LATOYA HUGHES,** | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Steven Podkulski, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, the complaint contains allegations about an alleged sexual assault, and staff or fellow inmate misdeeds towards Plaintiff in August of 2023. At the time of filing the Complaint, Plaintiff also applied to proceed *in forma pauperis* (IFP). (Doc. 2), but the Court determined that as an individual with three strikes, Plaintiff was ineligible to proceed IFP. Thus, Plaintiff was given 21 days to pay the filing fee. Plaintiff has timely paid the filing fee, so his Complaint is now subject to initial review.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that on or around August 7, 2023, two individuals gave him coffee that was laced with drugs and poison. He complains that while under the effects of the coffee, sometime between August 7 and 10, 2023, Defendant Agne opened his cell and watched as he was sexually assaulted by at least two individuals. He explains he was only somewhat alert, and his memory was "foggy" due to the coffee. Following the incident, he claims he developed two large holes on his feet and his legs were extremely swollen. His vision and hearing were also impaired. It took months for his legs and feet to heal, and over a year to regain his other senses. He claims that he eventually learned that he was a victim of this conduct because he had information about a murder. (Doc. 1 at 6).

On the night of August 7, 2023, Plaintiff alleges that Defendant Dintelmann directed him to strip naked and bend over at his cell bars. During this encounter he was also directed to place his hands outside the chuckhole. When he complied, Dintelmann

laughed and referred to him as a "stupid f******* Jew." (Doc. 1 at 7). He claims this conduct violated the First, Eighth, and Fourteenth Amendments.

Plaintiff claims that when he regained his wits, he overheard an inmate worker asking if he was dead yet. He took this comment, and the overall conduct, as an indication of a larger criminal conspiracy to murder him. He claims that staff are involved in the conspiracy and that it violated his First, Eighth, and Fourteenth Amendment rights.

He claims that he was worried about his safety, so he asked to be moved, and he was moved to another gallery. While on the five gallery, he repeatedly asked to see a "PREA person," but was ignored. He alleges that John Doe Officer "big John" told him he could not see anyone until he took a thorough shower. He claims this persisted from August 10-15, 2023, and constituted an Eighth and Fourteenth Amendment violation. (Doc. 1 at 7).

Despite alleging he was unable to get attention from August 10-15, Plaintiff also states that sometime between August 10-15th he was taken to see a mental health worker "Jane Doe" about his PREA concerns. He claims that during the visit he was terrified, and he was surrounded by staff in tactical gear, which heightened his anxiety. The mental health worker suggested in a hostile manner that Plaintiff "just had a bad day[.]" Plaintiff agreed, and the interview ended. He claims this violated his Eighth and Fourteenth Amendment rights. (Doc. 1 at 8).

At some point in August, Plaintiff filed a grievance about these issues and asked for preservation of video footage. He asked to speak to mental health again, and they

indicated they had been informed by internal affairs that his claims were unsubstantiated. He alleges he also spoke directly to Defendant Rash, an internal affairs officer. He claims that he told Rash everything, but Rash never investigated further. Plaintiff alleges that Rash's actions amounted to an attempt to cover for his co-workers, in violation of the Eighth Amendment. (Doc. 1 at 8).

Plaintiff alleges he has written numerous grievances to Defendants Wills (warden) and Hughes (IDOC Director), but the only response he got was a memo from Wills that said internal affairs was investigating the situation. He claims all Menard staff are working together to cover-up the situation. (Doc. 1 at 9). Plaintiff also alleges he has experienced ongoing threats and harms. Specifically, he explains that in the past he was always single-celled, but since this incident, he has been placed with three cellmates who have each expressed that they have been offered bribes to kill him. He explains they have all felt the bribe money was too meager, but one of the three severely beat him. (Doc. 1 at 9). He claims these actions are further attempts to cover up the crime against him, and to suppress information he may possess about a 2002 murder.

Plaintiff also alleges that while on 5 gallery, staff continued to ignore his pleas for help, and intentionally placed individuals in cells surrounding him to disrupt him. He claims the neighbors banged on the cell walls at all hours in an attempt to drive him to suicide. (Doc. 1 at 9).

He claims "staff are still actively working with inmates and [he] is seriously afraid for [his] life." (Doc. 1 at 8). He explains that he desires an immediate injunction directing his placement in 1 of 4 protective custody galleries, or an immediate transfer to Pontiac.

He also seeks single-cell status. Furthermore, he seeks criminal complaints against staff and his assailants, and he asks that they be placed on the sex offender registry. (Doc. 1 at 11).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** **Eighth Amendment cruel and unusual punishment claim against Agne for allowing the assault and failing to intervene between August 7-10, 2023;**

**Claim 2:** **Eighth Amendment claim against Defendant John Doe 1 for refusing a PREA evaluation between August 10-15, 2023;**

**Claim 3:** **Eighth Amendment claim against Defendant Dintelmann for forcing Plaintiff to strip and for harassing verbal remarks on August 7, 2023;**

**Claim 4:** **Eighth Amendment claim against Jane Doe 1 for aggressively dismissing Plaintiff's concerns during a PREA evaluation between August 10-15, 2023;**

**Claim 5:** **Eighth Amendment claim against Defendant Rash for listening to Plaintiff's concerns during an internal affairs interview but failing to act;**

**Claim 6:** **Eighth Amendment claim against Defendants Wills and Hughes for their handling of Plaintiff's grievances about the situation.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

Plaintiff's allegations that Defendant Agne opened his cell door and allowed other individuals to sexually assault him are sufficient to suggest either cruel and unusual punishment, or a failure to intervene or protect from an open harm. Claim 1 may proceed.

In Claim 2, Plaintiff faults Defendant John Doe 1 for insisting that Plaintiff could not make a PREA report until he showered to wash DNA off his body. There is no private cause of action associated with PREA, so Plaintiff does not have an enforceable right related solely to John Doe's handling of his PREA query. *See e.g.*, Sims v. Doe, 2018 WL 4027632 (S.D. Ind. Aug. 22, 2018); Bentley v. Baenen, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("The PREA does not create a private cause of action in federal court."); Poslof v. Martel, 2018 WL 3019916, n.5 (S.D. Cal. June 18, 2018) (The PREA "authorizes the reporting of incidents or rape and sexual abuse in prison, but it does not give rise to a private cause of action by a prisoner."). Additionally, to the extent that Plaintiff complains that officials failed to follow procedures in the Illinois Administrative Code related to his PREA report, violations of state laws or prison rules or regulations do not give rise to a claim under § 1983. *See e.g.*, *Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, prison regulations, or prison policies). At best, perhaps Plaintiff is suggesting that John Doe 1 kept him from getting needed medical or mental health attention, but he is not clear about what he told John Doe 1, or what John Doe 1 could observe. Plaintiff also states that during the same timeframe when John Doe 1 refused care, he actually was seen

by a mental health employee related to his PREA concern. Thus, it is unclear what he alleges he told John Doe 1 that John Doe 1 overlooked, or how long he remained in peril. As such, Claim 2 is insufficiently pled.

In Claim 3, Plaintiff faults Defendant Dintelman for demanding that he subject himself to a strip search and verbally harassing him when he complied. Plaintiff seems to complain primarily of the verbal harassment, as opposed to the manner of the search. Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The test for what constitutes cruel and unusual punishment is an objective one. It is not the actual fear of the victim, but what a "reasonable victim" would fear." *Id.* Here, Plaintiff's allegations are simply too vague to support a finding of verbal harassment that is actionable under the Eighth Amendment. Plaintiff understandably expresses discontent with the words uttered to him, but he does not describe the words creating any particular fear or harm. Thus, Claim 3 is insufficient as pled.

In Claim 4, Plaintiff faults Jane Doe 1 for aggressively dismissing his concerns during his first PREA interview between August 10-15, 2023.  He explains the interview was conducted in an intimidating setting, with guards in tactical gear, and that Jane Doe 1 was hostile towards him.  Although there is not a private right of action under PREA, Plaintiff describes Jane Doe 1 as a mental health worker, and it certainly seems that he was being seen by Jane Doe 1 to address his expressed concerns about an assault.  Against this backdrop, Plaintiff plausibly alleges that rather than offering any meaningful assistance, Jane Doe 1 was dismissive.  Whether this is negligence or rises to the level of deliberate indifference, Plaintiff does not identify any discrete harm associated with this issue, so for now the claim is insufficient as pled.  To state a deliberate indifference claim related to inadequate medical or mental health care, Plaintiff would need to identify a serious need for care, and a denial or delay of care that caused some discrete harm.  He has not yet identified any harm, so he may not proceed on Claim 4 against Jane Doe 1.

In Claim 5, Plaintiff faults Defendant Rash for listening to his concerns during an internal affairs interview but otherwise failing to act.  As the Court explained earlier, there is no private cause of action related to PREA protections.  To the extent that Plaintiff believes Rash should have take some other action in the course of an internal investigation, it is also not clear that inmates have any protected right in the outcome of prison investigations.  Plaintiff also does not explain how Rash's conduct has failed to protect him from subsequent harm, so there is no apparent basis for him to proceed against Rash under the Eighth Amendment.

Finally, in Claim 6, Plaintiff faults Defendants Hughes and Wills for receiving many grievances about these issues but failing to satisfactorily resolve the issues. Despite claiming there was no resolution, he admits that he got a memo indicating an internal investigation was underway. He does not explain what outcome he ever received from an investigation, or if he followed up with Wills or Hughes to inform them the outcome was not sufficient to protect him. The mere role in handling grievances is not sufficient, and to the extent he argues Hughes or Wills should have investigated further, it does appear they delegated the issue to other staff for investigation. Prison administrators are allowed to delegate tasks to their staff, so mere delegation as opposed to personally investigating does not support a claim. Without more detailed allegations about what came of the investigation or any follow-up correspondence, Plaintiff cannot proceed against Wills and Hughes on Claim 6.

It is worth mention that throughout the Complaint, Plaintiff alleges all his issues are a part of some larger conspiracy to harm or silence him. He claims this is a joint objective of staff and fellow inmates, but he offers nothing more than speculation and conjecture to support this theory. At most, he claims he heard an inmate staff member utter something about his possible death, and fellow inmates have made death threats, but he does not link any of these statements directly to staff. He says staff must be responsible for placing these individuals in his cell, but he also does not expressly indicate that he asked to be moved when the cell placement occurred, and he indicates two individuals of three caused no harm. To state a conspiracy claim, plaintiffs must "allege the parties, the general purpose, and the approximate date of the conspiracy."

*Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).  Here, Plaintiff has loosely alleged participants, a purpose, and a starting date of August 2023.  However, the exact parameters of his claim are still ambiguous.  The claim is added throughout the complaint more as an afterthought than anything else.  If Plaintiff wishes for this to be a freestanding claim, he should describe the participants and scope of this issue in greater detail.  For now, Claim 6 will be dismissed without prejudice.

Plaintiff also states in his demand for relief that he wishes for criminal charges to be pursued, but that is not something he can accomplish in a federal civil rights action as this Court has no authority to initiate any type of criminal proceeding sua sponte.

## Motions

Plaintiff initially filed four motions for emergency relief, but the Court found that none of them sufficiently established imminent danger, so the motions were denied. (Doc. 13).  Plaintiff has since filed a Motion to Reconsider the denial of the emergency motions (Doc. 15), and a new Motion for a Hearing to address his desire for a Temporary Restraining Order (Doc. 16).  In the Motion to Reconsider, Plaintiff repeats his allegations from the complaint that since August of 2023, three cellmates have told him that they were bribed to kill him, but that the financial reward was too low to be worth the trouble. He adds in the motion that a fourth cellmate expressed the same sentiments.  The first to make a threat did not act, the second physically beat him and injured his arm, and the third and fourth spoke of harm but never acted.  Plaintiff argues that he is in constant danger but does not associate any dates with these instances.  He also asks for the Court

to preserve video footage from August 7-15, 2023. These arguments do not provide a basis for the Court to reconsider the earlier ruling on injunctive relief.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Any injunctive relief granted must also be related to claims proceeding in the underlying lawsuit, and it must generally concern parties associated with those claims.

Here, Plaintiff's allegations are not tied to a clear timeframe, so it is difficult for the Court to assess the imminence of any potential harm. For example, he is not alleging that he currently resides with a cellmate who is threatening to kill him, or that he lived in such conditions in a recent month. Additionally, the allegations about impending harm are not associated with any of the named defendants. Generally, a request for injunctive relief must be tied to a clear underlying party and claim. Here, the sole claim proceeding is one against Defendant Agne, but there is no indication Plaintiff has interacted with Agne in recent months, or that Agne is involved in any present threat.

Plaintiff must do more to make it clear how he has sought assistance directly from the prison, what is posing a current threat, and how the responses at the prison level are

inadequate. He states that on one occasion right after the sexual assault incident he asked to be moved, and he was moved to another area. He also claims that in the past he has been single-celled. Both of these things suggest that perhaps if he asked the prison for assistance with his current predicament, it could be resolved at that level. If not, he should take care to explain why such efforts have failed and who has been involved in denying him a safe environment.

In Plaintiff's latest Motion (Doc. 16) he indicates he has repeatedly asked for protective custody over and over, but he does not indicate who is denying him, or what role they have relative to the allegations of this case. He alleges he is currently in danger based on retaliation, but he does not specify who is carrying out the retaliatory conduct. As such, his motion is still too vague to warrant injunctive relief. Plaintiff's motion to reconsider and his motion for an emergency hearing will be denied.

In addition to the emergency motions, Plaintiff has filed three Motions for Recruitment of Counsel (Docs. 3, 7, 12). In all three motions he alleges that he has significant cognitive impairments, he takes many medications, and he additionally suffers from PTSD associated with the alleged assault. He claims only some high school education and indicates that in other cases he has been represented by counsel. The motions are accompanied by many letters that demonstrate he has attempted to recruit his own counsel. Two of the motions also contain memos dated spring of 2025 from Warden Wills indicating that concerns he has raised to the Governor's Office are being investigated by internal affairs, and he was seen by mental health but declined services.

There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted).

If plaintiff has demonstrated an attempt to secure counsel, then the Court turns to considering the complexity of the case and plaintiff's competence to represent himself. "Some of the circumstances that require judicial consideration are the phase of the litigation, if the prisoner has been transferred between facilities, if the claims involved the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony." *Thomas v. Wardell*, 951 F.3d 854, 860 (7th Cir. 2020); *see Eagan*, 987 F.3d at 682–83. As for competence, "A judge will normally consider 'the plaintiff's literacy, communication skills, educational level, and litigation experience' along with any evidence in the record 'bearing on the plaintiff's intellectual capacity and psychological history.' But these are merely factors that are ordinarily relevant. No one factor is 'necessary or conclusive.'" *Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024) (internal citations omitted). The court must examine

specifically the plaintiff's ability to litigate the case, as opposed to the ability of any "jailhouse lawyer" assisting the plaintiff.  *Eagan*, 987 F.3d at 682.

Plaintiff has submitted sufficient evidence demonstrating he sought his own counsel, so the Court considers his ability to represent himself.  Plaintiff expresses concerns given just some high school education and cognitive impairments, but he has filed numerous pleadings in this case on his own, which have all been legible and relatively easy to understand.  This case is currently at the earliest phase.  The Court has designated a claim to proceed, and it has explained why the other initial claims were insufficient to proceed.  If Plaintiff wishes to re-plead claims, he need only give basic facts about the issues identified in his case such as what happened, who was involved, when and where it happened, and how it caused him harm.  The Court finds at this early juncture that he is up for this task given the many pleadings he has filed, including his ability to adeptly respond to the three-strike/filing fee issue by paying and presenting an explanation of his confusion in his motion to reconsider.  The next steps in this case will include service of process, and narrow discovery guided by detailed orders of the Court.  Thus, at this juncture, Plaintiff will not be required to do much at all on his own, and he will receive guidance about the things he needs to do.  It is certainly possible that later in this case he may require counsel, but for now the Court is satisfied that he can proceed on his own.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's Motions for Recruitment of Counsel (Docs. 3, 7, 12), his Motion for Order to Collect Filing Fee (Doc. 14), his Motion for Reconsideration (Doc. 15) and his Motion for a Hearing (Doc. 16) are all **DENIED**.

**IT IS HEREBY ORDERED THAT Claims 1** survives initial review against Defendants Agne.  By contrast, Claims 2-6 are insufficient as pled for the reasons explained in this Order and the Clerk of Court is **DIRECTED** to **TERMINATE** Anthony Wills, Latoya Hughes, John Doe 1, Jane Doe 1, Dintelman, and Rash.

The Clerk of Court is **DIRECTED** to prepare for Defendant Agne: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against the Plaintiff, and the judgment includes the payment of costs under Section 1915, the Plaintiff will be required to pay the full amount of the costs, regardless of whether their applications to proceed in forma pauperis were granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA protective order in this case because it may involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: September 3, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.